UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL E. STEPHENSON,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security<br><br>    Defendant. | No. CV 13-8303-AGR<br><br>MEMORANDUM OPINION AND ORDER |

    Plaintiff Randall E. Stephenson filed this action on November 7, 2013. (Dkt. No. 1.) Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 7, 8.) On July 8, 2014, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

    Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

## PROCEDURAL BACKGROUND

On July 27, 2009, Stephenson filed an application for disability insurance benefits alleging an onset date of June 20, 2006. Administrative Record ("AR") 27, 178-84. The application was denied. AR 27, 83. Stephenson requested a hearing before an Administrative Law Judge ("ALJ"). AR 99. On October 5, 2010, the ALJ conducted a hearing at which Stephenson testified. AR 79-82. The ALJ continued the hearing and referred Stephenson for a consultative examination in psychiatry. AR 27, 81. On June 13, 2011, the ALJ conducted a hearing at which Stephenson testified. AR 74-78. The ALJ continued the hearing and referred Stephenson for a consultative examination by an orthopedic surgeon. AR 27, 77. On October 5, 2011, the ALJ conducted a hearing at which Stephenson and a vocational expert testified. AR 48-73. On December 19, 2011, the ALJ issued a decision denying benefits. AR 27-42. On September 13, 2013, the Appeals Council denied the request for review. AR 1-5. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than

one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

### B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Stephenson has the severe impairments of lumbar spine disc space narrowing at L5-S1 with facet arthrosis, history of right cubital tunnel syndrome, history of right carpal tunnel syndrome, status post broken left foot and repair, and obesity. AR 30. His impairments do not meet or equal a listing. AR 33-34.

The ALJ found that Stephenson has the residual functional capacity ("RFC") to perform light work, except he requires the use of a cane for ambulation (although a cane is not medically necessary), can frequently use his hands bilaterally (right hand dominant) for all activities, can frequently use his feet, and can occasionally engage in postural activities, including climbing, balancing, stooping, kneeling and crouching. AR 34. He can have occasional exposure to environmental irritants, unprotected heights,

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

moving metal parts, operating a motor vehicle, humidity, pulmonary irritants (such as dust, odors and fumes), extreme cold and cold, and vibration. *Id.* He is unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that he can perform. AR 39-40.

### C. Mental Impairments

Stephenson contends the ALJ erred at step two in finding his mental impairments not severe.

At step two of the sequential analysis, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4) (ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). To satisfy the duration requirement, the severe impairment must have lasted or be expected to last for a continuous period of not less than 12 months. *Id.* at 140.

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. § 404.1508; 20 C.F.R. § 416.908. "[T]he impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'"[2] *Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen*, 80 F.3d at 1290 ("[A]n

---

[2] The ability to do basic work activities includes "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," "[c]apacities for seeing, hearing, and speaking," "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers, and usual work situations," and "[d]ealing with changes in a routine work setting." *Yuckert*, 482 U.S. at 168 n.6 (citation and quotation marks omitted); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.") (citation and quotation marks omitted).

"An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted).  Step two is "a *de minimis* screening device [used] to dispose of groundless claims" and the ALJ's finding must be "'clearly established by medical evidence.'" *Id.* at 687 (citations and quotation marks omitted).

At step two, the ALJ found that Stephenson's "medically determinable mental impairments of depressive disorder and post traumatic stress disorder do not cause more than minimal limitation in [his] ability to perform basic mental work activities and is therefore non-severe." (citations omitted).  In evaluating the severity of Stephenson's mental impairments, the ALJ considered the four broad functional areas known as the "paragraph B" criteria.  AR 32; *see* 20 C.F.R. § 404.1520a(c)(3); section 12.00C of the Listing of Impairments.  He found that Stephenson had no impairment in activities of daily living and social functioning, mild difficulties with regard to concentration, persistence or pace, and no episodes of decompensation.  *Id.*  When a claimant's degree of limitation in the first three functional areas is none or mild, and none in the fourth functional area, "we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1); 20 C.F.R. § 416.920a(d)(1).

Stephenson argues that the ALJ erred at step two by rejecting the assessment of an examining psychologist, Dr. Griffin, "based on an unfounded assumption that [the assessment] lacked a sufficient clinical basis." JS 9.  On March 2, 2011, Dr. Griffin performed a psychological assessment of Stephenson at the request of his attorneys. AR 423.  Dr. Griffin diagnosed Stephenson with Posttraumatic Stress Disorder, secondary to traumatic physical injury, complicated by traumatic relational losses; Major

5

Depressive Disorder; and Pain Disorder, chronic, associated with both psychological factors and general medical conditions.  AR 427.  He opined that Stephenson would have moderate difficulty performing complex instructions, making simple work related decisions, interacting with the public, supervisors, and co-workers, and responding to changes in a routine work setting.  AR 32, 427.  He would have marked difficulty responding appropriately to work pressures.  AR 32, 427.  He has a Global Assessment of Functioning ("GAF") score of 51.[3]  AR 32, 427.

Substantial evidence supports the ALJ's determination that Stephenson's mental impairments were not severe.  The ALJ gave greater weight to the opinion of consultative examiner Dr. Elmasht, who assessed no specific limitations in Stephenson's mental function and assigned a GAF score of 65.[4]  AR 31-32, 418-21.  The ALJ found that the record as a whole was more consistent with Dr. Elmasht's opinion.  AR 32; see Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (an examining physician's opinion based on independent clinical findings constitutes substantial evidence).  Although Stephenson was taking prescription medication to treat his mental impairment, he had no history of admission to a psychiatric unit or receiving outpatient services, counseling, therapy or other mental health services from a mental health professional.  AR 31, 299.  Moreover, Dr. Griffin's examination findings were not entirely consistent with the mental limitations he opined.  Dr. Griffin's report relied largely on Stephenson's subjective complaints, which the ALJ properly discounted, as discussed below.  The ALJ noted that Dr. Griffin apparently did not perform a mental status examination or any objective tests that might reveal Stephenson's functional abilities.  Dr. Griffin provided little support for the multiple mental limitations he assessed.  AR 32.

---

[3] A GAF of 51 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Text Revision 2000) ("DSM-IV-TR").

[4] A GAF of 65 indicates mild symptoms.  DSM-IV-TR 34.

Stephenson acknowledges that Dr. Griffin's report does not reflect a mental status examination, but argues that Dr. Griffin performed a clinical interview and relied on Stephenson's scores on three standardized tests. As the ALJ noted, however, Dr. Griffin appeared to rely solely on the results of the Million Clinical Multiaxial Inventory-III ("MCMI-III") and a test of malingering  AR 32. Although Dr. Griffin administered the McGill Pain Assessment Questionnaire, he did not report the results in the assessment. AR 426-27. Dr. Griffin noted that "Stephenson's response style [on the MCMI-III] suggests a moderate tendency toward self-deprecation and a consequent exaggeration of current emotional problems" and "[h]e may have reported more psychological symptoms than objectively exist." AR 426. The ALJ did not err.

### D. Treating Physician

Stephenson contends the ALJ erred in rejecting the opinion of his treating physician, Dr. Correa.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn*, 495 F.3d at 631. To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

The record contains several documents from Dr. Correa. In a letter dated October 4, 2010, Dr. Correa indicated Stephenson "is unable to hold a normal job" due to his major depression, marital problems and chronic pain since an accident on March

29, 2001. AR 37, 403. In a questionnaire dated October 4, 2010, Dr. Correa opined that Stephenson could sit, stand or walk for 0-1 hour per day, lift up to ten pounds occasionally and carry up to twenty pounds occasionally. AR 37, 406-07. Stephenson had marked limitations in grasping, turning, twisting objects, using his right fingers/hands for fine manipulations, and using his arms for reaching. AR 407-08. His pain, fatigue or other symptoms would constantly interfere with attention and concentration. AR 409. He is incapable of even "low stress" work. AR 409. He would be absent from work as a result of his impairments or treatment more than three times a month. AR 410. In a letter dated July 18, 2011, Dr. Correa stated that Stephenson "indicates that he is in chronic pain and cannot work any job at the present due to his disabilities." AR 442.

The ALJ gave Dr. Correa's opinion "little weight." AR 37. The ALJ found that the evidence supports the opinion of consultative examiner Dr. Conaty, who opined that Stephenson could perform light work.[5] AR 35-37, 434; *see Orn*, 495 F.3d at 631 (an examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings). The ALJ noted that Dr. Correa's citation of March 2001 as the beginning of Stephenson's inability to work was inconsistent with Stephenson's work history, which indicated he last performed work in 2006. AR 37, 50. The ALJ noted that Dr. Correa provided no objective or diagnostic basis for his opinion. AR 37.

Stephenson argues that the ALJ's two rationales for discounting Dr. Correa's opinion were flawed. First, he contends the ALJ "misconstrues" Dr. Correa's statement that his limitations stem from a March 2001 accident. He argues that Dr. Correa simply identified March 2001 as the date of the injury that would render him disabled, not an

---

[5] Dr. Conaty opined that Stephenson could lift and carry 20 pounds occasionally and ten pounds frequently. AR 434. He could stand, walk or sit for six hours. He requires the use of a cane, although it is not medically necessary. He can perform all activities with his hands frequently and use his feet frequently. He can perform postural activities such as climbing, balancing, stooping, kneeling and crouching occasionally. He can have occasional exposure to environmental irritants. *Id.*

opinion that he has been disabled since the date of his injury.  The ALJ's interpretation of Dr. Correa's statement was rational and the court must defer to it.  *See Moncada*, 60 F.3d at 523.

Second, Stephenson contends that the ALJ's statement that Dr. Correa provided no objective or diagnostic basis for his opinion is untrue.  Stephenson acknowledges that Dr. Correa's treatment notes do not contain any clinical examination findings.  However, he argues that Dr. Correa noted Stephenson's reports of pain and/or numbness in his foot and wrist, and that examination findings by Dr. Dimmick, an examining physician, provide clinical evidence in support of Dr. Correa's assessed limitations.

Stephenson's arguments are unavailing.  A physician's opinion that is premised to a large extent on a claimant's subjective complaints may be discounted when the ALJ's assessment of the claimant's credibility is supported by substantial evidence.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  As discussed below, the ALJ properly discounted Stephenson's credibility.  A treating physician's opinion may be discounted if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ did not err in rejecting treating physician's opinion unsupported by objective medical findings).  As Stephenson acknowledges, Dr. Correa did not make any clinical examination findings.  Although Dr. Dimmick found that Stephenson had a swollen left foot, reduced range of motion for his toes and foot, and a positive Romberg test, the ALJ properly found that Dr. Dimmick's findings supported the RFC, as discussed below.  The ALJ articulated specific and legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Correa's opinion.  The ALJ did not err.

### E. **Examining Physician**

Stephenson contends the ALJ erred in rejecting the opinion of his examining internist, Dr. Dimmick.

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Orn*, 495 F.3d at 631. An ALJ may reject an uncontradicted examining physician's medical opinion based on "clear and convincing reasons." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation and quotation marks omitted). When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id.* (citation omitted).

The record contains an internal medicine examination report from Dr. Dimmick, who provided a consultative examination on August 26, 2010. AR 385-93. Dr. Dimmick diagnosed chronic left foot/ankle crush injury since 2000, low back pain probably secondary to imbalance from left foot/ankle crush injury, right carpal tunnel and right cubital tunnel syndrome, and lesser left carpal tunnel syndrome. AR 391. He found swelling, tenderness, loss of range of motion and loss of strength in the left foot and ankle, loss of strength in the right wrist/forearm, tender right cubital area, and positive Romberg. AR 37, 392. He opined that Stephenson could sit for eight hours, with the ability to get up and move around for two to three minutes every hour, stand/walk for up to one hour, lift up to ten pounds occasionally, and carry up to five pounds occasionally. AR 392. Dr. Dimmick recommended that Stephenson not sit continuously or stand/walk continuously. Stephenson has "significant limitations in doing repetitive reaching, handling, fingering or lifting."[6] His symptoms would frequently/constantly interfere with attention and concentration. He can tolerate only low work stress. He needs to take unscheduled breaks every three to four hours for five to ten minutes. It is likely he would be absent more than three times a month as a result of his impairments. AR 393.

---

[6] In a Multiple Impairment Questionnaire dated August 26, 2010, Dr. Dimmick indicated that Stephenson had marked limitations in his right hand/arm for grasping, turning and twisting objects, using fingers/hands for fine manipulations, and reaching. AR 398-99. He had moderate limitations in his left arm for reaching. AR 399.

The ALJ considered and discussed Dr. Dimmick's opinion. AR 37. He gave greater weight to the opinion of Dr. Conaty, who found that Stephenson could perform light exertional work. The ALJ noted that Dr. Dimmick apparently relied on Stephenson's subjective complaints because his findings did not support his opinion. Dr. Dimmick did not provide a diagnostic basis for his findings of a loss of strength in Stephenson's right wrist/forearm and a tender right cubital area. *Id.*

Stephenson contends that the ALJ's rationale for discounting Dr. Dimmick's opinion was flawed. Stephenson contends that the ALJ's finding that Dr. Dimmick appears to have relied on subjective complaints is unsupported. As the Commissioner argues, Dr. Dimmick related Stephenson's medical history at length, including Stephenson's description of his debilitating impairments. AR 385-87. Stephenson reported that he was unable to bear any weight on his left foot, his carpal tunnel syndrome and elbow tunnel syndrome made it very difficult for him to address his computer, and his dizziness problems made him afraid to drive. AR 385-86. Dr. Dimmick's physical examination of the extremities revealed a surgical scar on the right upper extremity, the left foot swollen diffusely from the malleoli posterior, little range of motion of the toes, the MTP joint frozen but tender, marked loss of plantar and dorsiflexion of the ankle, approximately 50% loss of left and right lateral rotation of the foot on the tibia, palpable tenderness along the course of the Achilles tendon to approximately mid calf, a cooler left foot than right, and identical capillary filling. AR 389. Dr. Dimmick's neurological examination revealed that Stephenson was oriented times three, his cranial nerves II-XII were intact, and his deep tendon reflexes were physiologic at the knees. The right calf was visually larger than the left, but both thighs were the same size. *Id.* Dr. Dimmick opined that "[b]eing as severely limited as [Stephenson] is in terms of standing, using a keyboard and driving, [he] is for practical purposes permanently and totally disabled." AR 391.

11

The ALJ reasonably found that Dr. Dimmick appeared to have relied on Stephenson's subjective complaints in forming his opinion.[7] The ALJ properly discounted Dr. Dimmick's opinion that was premised on Stephenson's subjective complaints. *See Tonapetyan*, 242 F.3d at 1149. The ALJ did not err.

### F. Credibility

Stephenson contends the ALJ erred in his credibility assessment.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Stephenson's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AR 38.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

---

[7] Stephenson argues that Dr. Dimmjick's negative or benign findings do not diminish the affirmative findings that bear upon his low back, wrist and foot impairments. As discussed above, the ALJ did not disregard Dr. Dimmick's limited positive findings regarding Stephenson's low back, wrists and foot. AR 37. The ALJ noted Dr. Conaty's positive findings regarding Stephenson's low back, wrists and foot. AR 35, 432-33. The ALJ concluded that the positive findings of both Dr. Dimmick and Dr. Conaty support the RFC. AR 35, 37.

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13)[8] (quotation marks omitted). The ALJ may consider: (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Stephenson testified that he experiences constant pain in his left foot and ankle and lower back, resulting in the ability to walk for 10-15 minutes and for 100 yards. AR 38, 56-57. He testified that he can sit for 20-30 minutes, lift 15-20 pounds at one time and seven to ten pounds for one third of the day. AR 38, 65. He has numbness in his hands and difficulty bending. AR 38, 58-60. He experiences anxiety, difficulty with concentration, problems with memory, and dizziness. AR 38, 61, 63-64.

The ALJ found that Stephenson's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC. AR 38. The ALJ relied on four reasons: (1) the objective evidence did not support Stephenson's allegations; (2) Stephenson had only routine treatment; (3) Stephenson worked after his injury; and (4) Stephenson's activities of daily living were not consistent with the alleged degree of pain and impairment. AR 38-39.

---

[8] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

13

### 1. Objective Evidence

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The treatment record included no objective results that counter the finding that Stephenson can perform light exertional work. AR 38. Stephenson acknowledges that chart notes from his treating physician, Dr. Correa, do not contain examination findings but argues that he presented more than sufficient evidence to demonstrate the limiting effects of his foot, back and wrist conditions.

The ALJ noted that the objective findings support the RFC. AR 36-38. A 2004 MRI of Stephenson's lumbar spine "showed suspect transitional L5 vertebral body and no evidence of disc herniation or spinal stenosis." AR 36, 351-52. On October 19, 2009, Dr. To, who provided an independent internal medicine evaluation, found that Stephenson ambulated with a limp secondary to left foot neuropathy pain but used no assistive device for ambulation. AR 36, 300. He found normal muscle tone and mass, no evidence of deformities, swelling, or tenderness in the joints, normal range of motion throughout, normal foot architecture, and normal ankles. AR 36, 301. Stephenson had no pain on palpation of his paravertebral muscles and midline along the spinous process, a negative straight leg raising test bilaterally, and a reduced range of motion for flexion, extension, and lateral flexion. AR 36-37, 301. Stephenson had no problem with coordination, normal deep tendon reflexes, intact cranial nerves, normal motor function and a 5/5 on motor strength, a grip strength of 40 pounds bilaterally, intact sensation, and negative Phalen's and Tinel's signs, although he had complaints of left foot neuropathy pain. AR 37, 299, 301.

On July 18, 2011, Dr. Conaty reported that Stephenson had normal range of motion for his cervical spine, upper extremities, and lower extremities; no evidence of joint instability in his upper extremities; negative shoulder impingement and tendonitis tests; and normal extremity alignment. Stephenson rose easily from sitting and supine

positions. AR 35, 431-33. Stephenson had normal head carriage, cervical lordosis, and thoracic curve, no evidence of scoliosis, negative axial compression, no signs of muscles spasm or muscle tenderness, no evidence of muscle atrophy, and no swelling or masses. AR 35, 431. Stephenson had normal muscle strength with 5/5 motor strength throughout, normal deep tendon reflexes, and intact sensation, except for stocking type hypethesia in the upper right extremity from the elbow distally. AR 35, 432. Stephenson had diffuse tenderness in his paraspinal muscles, a range of motion for his lumbar spine of 70 degrees for flexion, 10 degrees for extension and bending for his right and left, a straight leg raising test while seated of 80 degrees and while supine of 10 degrees, as well as a positive Waddel's sign and Fabere test, but a negative Lasegue test bilaterally. AR 35, 432-33. Stephenson had a positive Tinel's sign and a positive Phalen's test, but had a grip strength of 40/40/40 pounds with his right hand and a 110/105/100 with his left hand. AR 35, 432. Stephenson's foot had normal range of motion, no evidence of swelling, no atrophy, some tenderness at the insertion of the Achilles tendon, and some tenderness at the lateral region of the lateral malleolus and forefoot bilaterally. AR 35, 433.

The ALJ noted that objective evidence in treatment records supports the RFC. AR 35. In November 2009, Stephenson had "intact cranial nerves, intact sensation throughout, a 5/5 on motor strength throughout, and a normal gait." AR 35, 366. In December 2009, Stephenson had "a normal neurological examination, a normal gait and tandem gait, normal Romberg tests, and normal flexor and extensor tests of strength." AR 35-36, 382. The ALJ's finding as to the objective medical record as a whole is supported by substantial evidence.

### 2. Routine and Conservative Treatment

The ALJ discounted Stephenson's credibility based on the routine and conservative treatment he received. AR 38. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted). The ALJ noted that the

treatment records reflect only standard medical treatment for medical problems. AR 38. The treating physicians largely did not refer Stephenson for diagnostic studies or to specialists. *Id.* Stephenson did not receive surgical treatments or pain relief injections for his back impairment. AR 38-39. He did not receive additional surgical procedures for his upper or lower extremity impairments since his foot surgery in 2000 and his right wrist surgery in 2006. AR 39. Stephenson acknowledges that he has not had additional surgical procedures, but argues that he has consistently taken powerful pain relieving medications consisting of Lorcet and Vicodin. Stephenson relies on the dissent in *De Herrera* to argue that powerful narcotics like Vicodin should not be subject to the conservative treatment rule when the side effects incapacitate a claimant. *De Herrera v. Astrue*, 372 Fed. Appx. 771, 776 (9th Cir. 2010). Stephenson testified that Vicodin works "the best for me." AR 61. He did not allege that Vicodin incapacitates him. Rather, after taking Vicodin, he does household chores, gets his son ready for school, takes a walk, watches television, sometimes goes to the store, and drives a short distance to pick up his son from school. AR 63, 208. Stephenson's reliance on *De Herrera* is misplaced.

The ALJ's finding is supported by substantial evidence.

### 3. Work Activity

The ALJ found that Stephenson's work history undermined his allegations regarding his left foot impairment. AR 38; *see Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). The ALJ noted that Stephenson received treatment for a foot injury in 2000 and worked until 2006 as a carpet layer and floor layer, which was heavy and skilled work as performed. AR 38, 40. Stephenson argues that his symptoms worsened during that time to the point he could no longer work. The Commissioner argues that Stephenson points to no objective evidence to support his claim that his foot condition was better before 2006 than after. The ALJ's finding is supported by substantial evidence.

16

### 4. Activities of Daily Living

The ALJ discounted Stephenson's credibility based on his activities of daily living, finding his activities were "not consistent with the alleged degree of pain and impairment." AR 39. An ALJ may consider a claimant's daily activities when weighing credibility. *Bunnell*, 947 F.2d at 346. The ALJ noted that Stephenson testified that he watches television, wipes the counter, and picks up items around the house. AR 39, 62. He washes dishes, helps his ten year-old son get ready for school, picks up his son from school, prepares simple meals, drives, shops for groceries, and performs most of his personal care without difficulty. AR 39, 62, 208-10. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

When, as here, "the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)). The ALJ did not err in his credibility assessment.[9]

### G. New Evidence Submitted to Appeals Council

Stephenson contends the Appeals Council erred in rejecting relevant medical evidence and failing to incorporate a copy of the new evidence into the record.

---

[9] Even assuming one of the ALJ's reasons for discounting Stephenson's credibility was unsupported, remand would not necessarily be warranted. In *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008), the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid. However, when an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and ultimate credibility determination*." *Id.* at 1162 (italics in original). Therefore, when an ALJ articulates specific reasons for discounting a claimant's credibility, reliance on an illegitimate reason(s) among others does not automatically result in a remand. *See Batson*, 359 F.3d at 1197. Here, in light of the ALJ's valid reasons for discounting Stephenson's credibility and the record as a whole, substantial evidence supported the ALJ's credibility finding. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (any error was harmless even if record did not support one of four reasons for discounting claimant's testimony).

17

"If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b).

Here, the Appeals Council acknowledged the new evidence:

> We also looked at the report dated February 6, 2012 from Daniel Kaplan, M.D. (6 pages); the report dated February 6, 2012 from James Jung, D.P.M. (8 pages); the report dated March 9, 2012 from Ronald Correa, M.D. (5 pages); the report dated June 12, 2012 from Gerald Swanson, M.D. (3 pages); the report dated October 13, 2012 from Gerald Swanson, M.D. (4 pages); and the report dated December 14, 2012 from Gerald Swanson, M.D. (5 pages).

AR 1. The Appeals Council concluded that the new evidence did not relate to the period before the ALJ's decision. AR 1-2. The Appeals Council did not include the new evidence in the record.

The Appeals Council properly rejected the new evidence because it reasonably concluded that such evidence "is about a later time." AR 2; *see* 20 C.F.R. § 404.970(b). Consequently, the new evidence did not become part of the administrative record. Stephenson's presumption that the Appeals Council merely looked at the dates of the new exhibits and did not consider the contents of the exhibits is unsupported.

Even assuming the new evidence should have been included in the record for purposes of judicial review, the ALJ's decision was supported by substantial evidence and was free of legal error. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (The reviewing court's role is "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error."). To warrant remand, Stephenson must demonstrate "a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). Stephenson has not made the requisite showing.

18

According to Stephenson, the new evidence is attached to the Joint Stipulation as Exhibits A, B and C. Exhibit A is a report by Daniel Kaplan, M.D., dated February 6, 2012. Dr. Kaplan stated that Stephenson complains of increased lower back pain and left foot pain that is "worse over the years." He diagnosed Stephenson with crushing injury ankle/foot. He noted that Stephenson has degenerative joint disease in the left foot and degenerative disc disease in the lumbar spine. The physical examination revealed "[n]ormal deep tendon reflex in ankles," "[n]o sensory deficit with normal touch sensation, normal pin prick sensation, normal vibration sensation, normal proprioception," as well as normal muscle tone, stable condition, and 5/5 strength in the left lower extremity. Dr. Kaplan opined that Stephenson cannot return to his regular work, he needs work which allows him to change position during the day, and he cannot sit or stand "all day."

Exhibit B is a report by James Jung, D.P.M., dated February 6, 2012. The report is entitled, "Disability Evaluation." The report references Stephenson's December 1, 2000 injury to his left foot and his continued pain to his left foot and ankle. Dr. Jung declared Stephenson permanent stationary with permanent disability due to the posttraumatic arthritis and nerve damage of the left foot and ankle.

Exhibit C is a letter by Ronald Correa, M.D., dated March 9, 2012. Dr. Correa stated that Stephenson's left foot was injured in December 2000. He began treating Stephenson in March 2002. He outlined Stephenson's current complaints: "he now complains of chronic back pain," "his left foot is now arthritic," "his chronic pain now requires Vicodin ES and is now addicted," he "now complains of right had carpal tunnel and tennis elbow pain," he "complains of upper left extremity pain." Dr. Correa stated that "after many years of physical therapy and pain medications [Stephenson] never got better, he was permanent and stationary." Stephenson was a carpet layer for 22 years "and can no longer do." Stephenson's injury and chronic pain will remain permanent and stationary.

    Even assuming Exhibits A-C relate to the relevant time period, the court finds that the evidence would not provide a basis for changing the ALJ's decision. Dr. Kaplan's opinion is not necessarily inconsistent with the RFC. The record contains Dr. Jung's progress report of August 2001 and a supplemental report of February 2002 in Stephenson's worker's compensation case. AR 449-51, 463-65. In 2001, Dr. Jung concluded that Stephenson should receive job training to a position of sedentary work due to severe post-traumatic arthritis to the Lisfranc's joint, with neuritis aggravated by prolonged standing. AR 449. He declared Stephenson permanent and stationary in two weeks if his condition stabilized. AR 450. In 2002, Dr. Jung opined that Stephenson should not stand or walk in excess of 50% of the time, not to exceed twenty minutes of continuous standing or walking. AR 464. As the ALJ noted, Stephenson worked until 2006 in a job that combined the work of carpet layer and floor layer, which was heavy and skilled work. AR 38, 40, 67. The ALJ discounted the opinions of Dr. Correa contained in the record because they were contrary to the weight of the medical evidence and lacked objective medical support. AR 37, 403-11, 442. Dr. Correa's opinion in Exhibit C suffers from the same shortcomings. The ALJ's decision is supported by substantial evidence.

## IV.

## ORDER

    IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

    IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 20, 2014

                                      ALICIA G. ROSENBERG
                                      United States Magistrate Judge